Good morning. May it please the Court, my name is Goni Frieder-Goldberg on behalf of Appellants AFGE Local 1 and John Govello, and I'd like to reserve, please, five minutes for rebuttal. This is a purely First Amendment case. For the District Court not to have subject matter jurisdiction in this case, it would take extreme legislation that does not exist here. Below, the government argued that there was no subject matter jurisdiction with the District Court. The government now concedes it misled and it was an error. The government now alleges that there are no material facts in dispute and therefore there is no claim. The government... Did the government make that argument below? It did not make that argument below. That's because it didn't have to, right? It had the right to bring that argument below. It could have brought a 12b1 and 12b6. I don't know what happened. It could be. I've seen this happen in District Court. You know, they argue on the jurisdiction and they say, well, and then I have my backup argument as they say the case, well, you don't have to go into that. The court might say, right? The District Court could have ruled on one and not the other. That is correct. Well, so I'm saying the government didn't have to go into it. The government might not have had to, but the government also chose not to. And therefore the District Court did not rule on it. But is it record clear that it was the government's choice? Did they say, by the way, before we start an argument on lack of jurisdiction, we want to waive any argument on failure to state a claim? No, they did not waive their argument. Are you arguing that the government has waived its 12b6 motion? I don't think you better argue that. We are not arguing that. What we're arguing is that it's premature for this court to rule upon that because it was not briefed below. It was not ruled upon below. And for all we know. Why is it premature if we can, you know, affirm the judgment below on any basis supported by the record? Well, the general principle of law is that the general principle is that courts of appeal will not rule on issues that were not addressed below. But those are both general principles. They say it's also a general principle that we can affirm the judgment below on any basis supported by the record. That's correct. We would argue. How do we choose between those two general principles? I guess that's the question. We would argue just, you know, just that the record below does not support a finding that there was a failure to state a claim. So that goes to the merits. That does go to the merits, sir. Not that we shouldn't reach the argument. Well, that is our alternative argument, yes. All right. If you will, I think this will be true for both of you. If you're going to win here, you'd prefer to do it now rather than a remand. Okay. That is true. Yeah, that's probably true for both sides. That is true. The government, however, made an error in its argument regarding the failure to state a claim. There is a material dispute of fact. The government claims that we're just at the pleading stage, right? We were just at the pleading stage. How can there be a material dispute of fact at the pleading stage? Well, the government alleges that Mr. Govello gave SSI material, and the government states that we have conceded to that point. In fact, our contention is that a direct reading of the pleadings does not state that we concede that point. What was stated in the pleadings at Record Excerpt, I believe it's 5 and 6, is that Mr. Govello submitted to his supervisor a grievance. That grievance, at the bottom of it, stated CC, Attorney for AFGE General Counsel, that SSI, security-sensitive information is what SSI is, includes standard operating procedure. We did not allege in the pleading that standard operating procedure was put forth in the grievance. We also did not allege that Mr. Govello had ---- The grievance, by the way, itself wasn't attached to the complaint as far as I can tell. Is that right? That is correct. So we don't know the full wording in the grievance itself, do we? I mean, it's not before the ---- it's not part of the record now. That is correct. But because we're talking about the stage, that there's been no hearing, there's been no finding of facts, there's even been no discovery, the inference has to be in Mr. Govello's favor as to the factual determinations drawn from the complaint. Much more than that, isn't it? Don't you take the facts as true? We take the facts as true and any inferences from them in favor of Mr. Govello, in favor of the appellant. Nowhere in the pleadings does it state that Mr. Govello actually did send a copy of the grievance to AFGE General Counsel. Nowhere in the grievance does it state that he sent anything, but even were he to state that, Mr. Govello ---- That's a fair inference of the, you know, the CC at the bottom of the document? I don't think for the government to state that there's no ---- there's failure to state a claim that that's a fair inference. Perhaps when it goes to whether they had the right to terminate him, one, I'm sure the government is going to argue that that would have been a fair inference for the government ---- for the TSA to have determined, but that goes to the question of fact, whether ---- I mean, it's a possible inference, but not a necessary inference. Is that what you're saying? I'm saying that it's not a possible inference for the purposes of determining whether there's a claim stated. I'm saying that the only inference that it would be possible for is whether the government was justified in their termination. However, it's not a justifiable inference for the purposes of interpreting the pleadings. Your argument, for example, would be, I guess, that it's possible that he put the CC down at the bottom in order to, maybe in a misguided attempt, to intimidate the recipient of the letter. Listen, I'm telling everybody, but he may not have done so. That is correct. That may or may not be true. I have no idea. Many Federal government employees do that. In fact, in this case, it is our understanding that Mr. Gabello is going to testify that he did, in fact, mail a redacted version of the grievance. But that also is not in the pleadings, and it's also not in the record before you. But to the extent that the government has argued, rather forcefully, that there is no dispute of material fact that Mr. Gabello did send this grievance in its full form to General Counsel's office is, in fact, not a fair reading of the pleading. And it's also an error in their argument to support their argument that we did not state a claim. Turning to subject matter jurisdiction over constitutional claims, this court, the District Court, excuse me, the District Court has subject matter jurisdiction over constitutional claims for two reasons. First, as articulated in Whitman, there's been a tectonic shift in the analysis of how the CSRA applies in the Federal sector. Instead of asking whether the CSRA, the Civil Service Reform Act, confers jurisdiction, the real question is whether, according to the Supreme Court now, the real question is whether the CSRA repeals Federal subject matter jurisdiction pursuant to Section 1331. Now, is that in dispute given the government's brief? That is not in dispute anymore. But it is still incumbent upon this Court to make its own independent determination. Even though the parties now appear to be in agreement on that particular point, it is still, it is still your. You wouldn't mind us agreeing with both of you? We would be more than happy for you to agree with the both of us, yes, Your Honor. And we would just like to point out, therefore, that the CSRA does not have an express repeal in its statute. On the plain wording of the statute, it also does not have a repeal in the legislative history. The legislative history is very, very long. It's about 800 pages long. And it does not seem to expressly state that the Congress had an intent to repeal 28 U.S.C. 1331. Similarly, as this Court has determined, repeals by implication are disfavored. There are two ways to repeal by implication. The first method is by, by irreconcilable difference. And we would argue that there is no irreconcilable difference here. The CSRA does give jurisdiction in certain categories of cases, but it does not state that other categories are not allowed to be reviewed. The second method of repeal by implication is that one entirely swallows and therefore substitutes the other. And in this case, that is not the issue either. The fact that the CSRA exists does not entirely swallow Federal question jurisdiction. Kennedy. If you don't mind, I'd like to direct your attention to the question, assuming that we have jurisdiction to grant equitable relief for constitutional violations, as to whether or not we have the power or the district court has the power to grant back pay as part of that relief. That's turning to the sovereign immunity argument. Yes, so that I think is contested. That is absolutely contested. We would argue that the APA, while it might, the APA, the Administrative Procedure Act, does waive sovereign immunity for the purposes of back pay for the following reason. The Back Pay Act talks about specific release versus monetary damages. However, the word monetary is misleading in that, as discussed in Bowen versus Massachusetts, the fact that money is given does not make it actually monetary damages necessarily. The real question is whether the money is a substitute for the harm. So, for example, if there was no other avenue of relief, like a punitive damage, for example, is a monetary damage because it is a substitute for the harm. We are not asking you to do that. Can I, can I, I've got, in my head, I've got two analytic divisions to the question, and maybe you can help me out. My first question is, and I think you're in the process of answering this, and that is, is the equitable relief of a back pay order equitable relief within the meaning of the jurisdictional exception that the government has conceded and you're arguing for, that is to say, we, you are entitled equitably for a constitutional violation. Yes, well, you see, the courts are split as to that particular issue. My understanding is that many courts find that back pay is equitable relief, but that doesn't necessarily, the fact that it is equitable does not necessarily make it a waiver of sovereign immunity for the purposes of the APA. Well, that's the second question. Assuming that it comes within, as it were, the jurisdictional exception to what's otherwise prohibited, you can't get a Bivens Damage Act, for example, but you could get various forms of equitable relief. So we have jurisdiction in that sense. But then the question is whether the government has waived its sovereign immunity objection. Is that, I think, a different objection. That's correct. And that, again, appellants assert that the APA is a waiver of sovereign immunity for specific relief. And we would argue that back pay is specific relief in that it is ancillary to the injunctive relief. It flows from the injunctive relief and it is returning the appellant, Mr. Govello, to the status quo. We are not arguing that appellant AFGE Local 1 would be entitled to back pay. We are arguing that appellant Govello would be entitled to back pay. There is a distinction there to be made. It would return him to the status quo and, therefore, it is specific relief as opposed to monetary damages. And our second argument, Your Honor, is that the Back Pay Act itself would be the second waiver of sovereign immunity. As the TSA is a federal government executive agency, and as there was a final decision in this case, were the adverse action deemed to be unwarranted, the Back Pay Act, it appears to us, would waive sovereign immunity as well. How is the, just as a matter of background, how is, you know, back pay remedy usually affected under the Back Pay Act? What happens in the usual case? In usual, I guess I'm a little confused. Well, where, you know, how does a person receive back pay under the Back Pay Act? That's my question. I mean, does anybody ever get back pay? Yes, many people. But nobody ever gets it because of sovereign immunity. Right. Many people get back pay. And how does that work? Well, the Back Pay Act itself talks about an adequate adjudicator. I know, but as I say, give me an example in the usual case how that works. Okay. For example, the EEOC, when determining that there's been a finding that something has been discriminatory, they could award back pay. Actually, they award it. Who would make that finding? The commission has, the Merit System Protection Board has. All right. So the usual case, that finding is made by the Merit Systems Protection Board. Well, I guess I need to be clear. The TSA itself, for the purposes of screeners who are now called screening officers, they do not have rights under the Merit System Protection Board. So I want to make clear when I say a usual case, I'm talking about other federal government employees other than those that are at issue here. Similarly, other federal government employees who have grievance rights, they would also be able, through arbitration, to get back pay under the Back Pay Act. But in those cases, is it the board that actually makes the back pay award, or do they have to go to court? Do they go to the claims court, or where do you go to get back pay? Well, wherever the adjudicator who determines back pay could be the Merit System Protection Board. It could be an arbitrator. It could be a district court. It depends, really, who you have the right to bring the claim in front of. Of course, that was one of the issues in Bruce v. Lucas. So it's not unusual for all of those agencies or bodies to award back pay? That's correct. When there is subject matter jurisdiction, that's correct. Either of those, the Back Pay Act does not specify that the district court or the MSPB, it talks about an adequate decision maker. All right. Well, that's the reason I asked my question, because the statute is not very clear, and I don't think I've ever had a Back Pay Act before. Thank you very much. Sure. At this time, I believe I only have five minutes remaining, so I would like to save that, if I may, for rebuttal. That's fine. Thank you. Actually, in conclusion, I just wanted to say that we are asking for this court to vacate in its entirety the district court decision. We're asking for the court to reject the new arguments raised by the government, and we're asking to remand for determination on the remaining issues. And I would also like to draw your attention, with my apologies to a typo, in page 17 of the main brief, the second full sentence at the end, there is an additional not. It starts with the word however, and I just wanted, with my apologies, to draw that to your attention. Thank you. It's 17? 17. Are you ready? And please, the Court, the Department of Justice. I represent the Alpha Lee, Kip Hawley, the administrator of TSA. This case is very unusual for us. It's not often in my 23 years of experience at the Department of Justice that we can just err on a jurisdictional point. We have done so here based on our position of commitment, and we have suggested to the court that even though this is a jurisdictional inquiry, that the court must itself satisfy itself that the district court has jurisdiction, that the court essentially follow the position that we have taken in Whitman, in terms of the scope of the district court's jurisdiction. And that would be basically the D.C. Circuit's approach in Stedman, as most recently followed in Loy, in which exhaustion of all administrative claims is required before the district court may ever exercise jurisdiction. I am not at all certain that the court can, within the confines of circuit authority and precedent, reset decision without going in bank. We have suggested a way under Webster v. Fall in which the court may do that. I cannot stand here before this Court and tell you that I have access to all the briefs necessary to make the determination that the case Webster was ever argued to the court. Certainly, Webster has been around for a long time, since 1988, and the bulk of this circuit precedent, including the Fall case, occurred after Webster was decided. So Webster is not intervening authority. So it is, as it stands, after the Whitman remand from the Supreme Court, circuit precedent still obtains. I understand this places the court in rather an inimitable position, but it is nonetheless our position that the Whitman position should be followed by this Court henceforth. How you get to that, I'm not sure I can help the Court very much. Now, to the extent that you're arguing now that we do have subject matter jurisdiction for equitable relief, resting on constitutional claims, as I look at our earlier cases that you're concerned about and we obviously are bound by, are any of those equitable relief claims or are those all Bivens damage claims? The Sell case is on point, Your Honor. In the Sell case, it was started off as a Bivens claim, but the panel of this Court went on to affirm denial of the leave to amend State injunctive relief, saying that it was futile to allow such an amendment seeking solely injunctive relief against the officials in their official capacity, exactly this case, because the principles underlying the preclusion of district court jurisdiction for damage claims in Bivens also obtained to injunctive relief. That's a direct holding on the point. And that, of course, is not impressive. I don't think the Court has failed to address this point. It has. And certainly, as articulated, the rules articulated by this Court repeatedly, there's a very broad, bright-line rule, and that is, of course, that Federal employees simply have no jurisdiction to challenge the conditions of their employment or administrative action against them in the Federal courts period. And this simply has been applied in a wide variety of situations, in much different factual situations. And this is, in fact, the position that most circuits have followed, with the exception of the D.C. Circuit and the Third Circuit. This is also the conflict that we asked the Supreme Court, but we briefed in the Supreme Court on whether the Supreme Court failed to resolve in Whitman. But in reaching that briefing decision, and I was involved in this as well, we decided that we could not distinguish Webster v. Doe, and that Webster v. Doe would control the outcome on that very limited question. Now, I would focus that this is a very limited concession. We are not conceding that there is a damage remedy. We're not conceding that there's a Bivens remedy. We're not conceding that there's anything other than prospective relief on an equitable claim. Kennedy, does that include back pay? Back pay is damages. It's what? The Hubbard, D.C. Circuit held in Hubbard, and the Second Circuit held in Ward v. Brown, that back pay is compensatory because it is a substitute for what the plaintiff was originally requested. Govello here used it as an equitable remedy. The label you put on it simply doesn't matter. But you just put the opposite label on it and attached a consequence to it. The inquiry is whether or not it's a substitute. That was the inquiry that the Supreme Court made in Hubbard. It reversed the decision of this Court, which held that the fact that a persecution claim was equitable was enough to award damages. The Supreme Court reversed it unanimously, said no, the persecution claim in that case was designed to compensate the person for whom the lien was given, or the failure of the party in that case to pay. And the Supreme Court said that's compensatory damages. And because it was compensatory damages, there's been no waiver of sovereign immunity, and reversed this Court. Now, do you get a jury trial on back pay? Certainly not. Because? Because it's the Federal Government and no jury trial lies against the JFF. You get a back pay in an ordinary EEOC case not against the Government? Because Congress has expressly allowed Title VII of the Civil Rights Act jury trials on those questions. But we don't have a Title VII claim here. But what I'm asking is, I think the Court has said that there's no constitutional entitlement to jury trial for back pay provisions because it's equitable, it's a form of equitable relief. Am I wrong on that? Your Honor, you are wrong on that in the sense that there's no jury trial against the Federal Government, period, unless the Federal Government. No, no, I'm not talking about suits. I'm talking about suits against a private employer. That well may be in a private employment situation, Your Honor. But again, the rationale, there's no constitutional right to jury trial for back pay against private employers because the Court says, well, it's an equitable remedy for which you're not entitled to a jury? Your Honor, that may well be the case, but it doesn't matter, because private employers don't have the benefit of the sovereign immunity of the United States. But I'm trying to figure out this rather difficult line between equitable and non-equitable. It's equitable in law. I mean, it torments us in many areas of the law, as you're well aware. Your Honor, I don't think it's that difficult because controlling inquiries, not whether it's equitable or not, but whether there's a jury trial or not, the controlling inquiry for purposes of the APA is whether or not it's a substitute. And this is a substitute for what Covello originally says he's entitled to, his job. It compensates him for the loss of his job. And the D.C. Circuit held in Hubbard that that's compensatory. This Court has followed that same substitute analysis in the Marceau case that ASG cites in their brief. Inquiry is always whether or not it's a substitute for the wrong. It's compensatory because it is a substitute. And the label you put on it, as the Supreme Court held in Blue Fox, is simply irrelevant. It doesn't matter a bit. It doesn't matter a bit what the private sector holds, because no private sector defendant has the sovereign immunity of the United States. The waiver of sovereign immunity only goes to relief other than money damages. And the Supreme Court in Blue Fox and this Court in Marceau has defined what that means. Kennedy. There are two questions that are in my at least involved here that so far your discussion is, two questions your discussion is blurring, and that is, number one, is an award of back pay equitable relief in the sense that we have jurisdiction, absent a claim of sovereign immunity. Do we have jurisdiction to grant equitable relief for a constitutional claim? And the second question related, obviously, is does the Federal Government have sovereign immunity? As to the second question of sovereign immunity, there's an argument that the Back Pay Act waives whatever sovereign immunity the government might have had. Your Honor, back pay is permitted only to the extent it is otherwise allowed under the CSRA or the FAA system or other system that are administratively created for its award. The Federal Circuit has held the Back Pay Act was, in fact, the very statute at issue in FOSTA. The Supreme Court held that a remedy on the Back Pay Act could not be had where there was no remedy under the CSRA itself. In fact, the district courts never award back pay. Back pay is typically awarded by the MSPB with judicial review in the Federal Circuit. So you're arguing that there's been a waiver of sovereign immunity with respect to back pay by the Federal Government, but only with respect to certain forms of proceeding? The extent of the Back Pay Act has been authorized. It is only to the extent that it's authorized, otherwise authorized, in the CSRA itself or by the FAA. No, but the CSRA says that it's authorized where, I forgot the language, but, you know, where any competent authority says there's been a wrong, right? Your Honor, that's so. And just because that's usually the MSPB doesn't, the Act doesn't say it's exclusively the function of the MSPB, does it? There's a further point on this, Your Honor. It is a, to the extent that back pay, its compensatory damages, is always awarded only by the MSPB or on other administrative procedures. That is a situation where the Congress has directed the back pay into that procedure. There is no waiver of sovereign immunity for any other type of award, period. Whether you call it equitable or not equitable, the only type of back pay ever permitted is one awarded pursuant to those administrative procedures. In fact, most recently, the MSPB held that the back pay has been awarded. Just a minute, just a minute, just a minute. What statute are you relying on for that limitation? Well, the CSRA itself, Your Honor, as construed by the Supreme Court in FOSTA. Says what? The CSRA says nothing about who can award back pay, does it? Yes, it does, actually. It says that these claims are brought pursuant to the CSRA and the FAA system that Congress has made. In the usual case. In the usual, Your Honor, there is no case in which. But you're just saying in this case, I mean, you're conceding there's jurisdiction in another tribunal to consider the, you know, the constitutional wrong. Your Honor, the only thing that's permitted, understand, too, that this is a statutory claim. This is not a constitutional claim. Well, a statute under what statute? Well, the Back Pay Act. Precisely. So it doesn't come under the CSRA. That's my point. All statutes. That's exactly my point. Your Honor, it does, because this Back Pay Act. You just said it's a statutory claim under the Back Pay Act. The Back Pay Act allows by its terms only back pay pursuant to the terms of the CSRA or the FAA. It doesn't say a word here about the CSRA, does it, in the Back Pay Act? Where does it say that? It says any appropriate authority can make the finding. That has been defined by the Supreme Court in FOSTA to mean these. In certain cases where the CSRA has, you know, jurisdiction or where the MSPB has jurisdiction. It's never made a finding either way in a case like this. Your Honor, to bring this to the point as well, the MSPB has recently held, on behalf of the 520J letter on this, that the Back Pay Act doesn't apply to the TSA, period. That there's no back pay award ever put to both parties. That's their holding. You know, maybe it's entitled to some consideration, and maybe it's not. The reality, though, is that it's a type of statutory claim that is for which our concession in Whitman does not apply. We're talking only about prospective equitable relief. That's the type that's allowed for a constitutional claim. This administrative structure of the Congress that's created in the enactment of the TSA precludes any other type of claim, including a statutory claim based on the Back Pay Act, however that may be defined. Those kind of claims are barred. The only claim that can go forward under our Whitman position, and indeed the position of the President of this Court, are the prospective claims for a constitutional violation. A claim for compensatory relief is not that kind of claim, period. And to the extent that this Court is bound by its prior precedent, we were urging the Court to depart from that precedent only to the extent of allowing that type of claim to go forward. The Court has no warrant to depart from all other precedents to allow wholesale back pay awards that's never been allowed in this Court or, for that matter, in any other circuit. You'll not find this in the D.C. Circuit. You'll not find this in the Third Circuit. You'll not find it in any circuit on land which permitting back pay awards for constitutional claims are allowed to go forward under this type of analysis. Kennedy. Well, let me ask the question this way. Is there a case for many circuits that finds, you know, a constitutional violation in a case, in an employment case like this, and then goes on to say, but we have no jurisdiction to award back pay? The Third Circuit's decision in Ditching v. Herb. One of the circuits, in addition to the Third Circuit, that allows constitutional claims to go forward. Now, that decision says expressly, damaging claims are simply not allowed, period. But we're going to allow the injunctive relief to challenge prospectively. Now, this is the Supreme Court's analysis in the Verizon case as well, cited by the Supreme Court in Whitman, where what we have here is a type of jurisdiction for the type of ex parte young injunctive relief against officials acting in their official capacities. Prospective only, not damages, not an award of any other type of relief. So at most, that would mean that Pavela would be entitled to challenge his discharge, but not get back pay for it, not get compensatory relief for it. Did you say Whitman speaks to this subject? I mean, the Supreme Court Whitman case? Whitman's decision cites Verizon and talks about the jurisdictional point. Verizon goes on and talks about ex parte young. Ex parte young, as the Supreme Court explained it in Verizon, holds the type of relief that's permitted there. It's not damages. It's solely equitable relief prospectively only. And that's the type of relief that our concession in Whitman is addressed to, and only that. All other types of relief are barred under the Supreme Court's decision in Vosto, just as this Court has consistently held since Vosto was decided, for and since. So that body of precedent would counsel against expanding any sort of relief beyond that very limited type of equitable relief that this Court has traditionally barred itself. So the scope of relief here is very, very narrow. Now, I see that my time is almost up, but I did want to focus briefly on what I would ask the Court to do here, if the Court can find a way to say that district court had jurisdiction. And what we think should happen here is that the Court ought to address the merits of the claim. And as to whether or not the Govello actually sent the material, it really doesn't matter at all. TSA was entitled to take Govello at his word in the CC. And the TSA has complete and absolute discretion over the hiring and conditions of employment of TSA screener employees. Except that it can't violate his constitutional rights. Correct. So that's a pretty big except. It's an exception, Your Honor. But certainly TSA was able to say, we believe, we're going to take him at his word that he sent SSI information to the union. Did he send what? Sent what to the union? To the union. No, sent what to the union? SSI information. That's security screening information. But he didn't say he sent it. Yes, he did, Your Honor. It's in the complaint. What does the complaint – how does the complaint say he sent it? And the complaint says – Give me the paragraph here. Well, it's paragraph 22 and 23. 22 and 23. Okay. Go ahead. And 24. 22 says, and I quote, The grievance requests that written procedures regarding baggage inspection, swiping, and sampling as they're not currently included in standard operating procedure. At the end of the letter, the words CC General Counsel were included. The next paragraph, 23. SOP, standard operating procedure, is considered security sensitive information. All right. Now, that is a statement on the face of the complaint. That says what? It says that he sent on – or by virtue of the CC, that he told TSA that he was sending SSI information. No, it doesn't say that. It doesn't say that at all. That's not a reasonable reading of the allegation. In fact, it says – it says the baggage inspection and swiping procedures are not included in the SOP. What is and without the SOP is security sensitive information. And this Court need not look no further than the regulations to see that. 49 CFR 1525.5b9, where it talks about any procedures, including selection criteria, comments, instructions, implementing guidance concerning thereto, is considered SSI information. What is – it's not within the SS standard operating procedures. It's just as important as what is in it. It is a procedure. All right. Well, first of all, give me that – give me that CFR section again. 49 CFR 1520.5, subparagraph B. 1520.5b? B9. B as in Baker? B as in Baker. 9. 9. Okay. Subpart little i. Okay. Thank you. Because I want to – You need not go any further than that to see that this is SSI information. Certainly, the complaint says SOP information is considered SSI. And on that concession alone, TSA was perfectly entitled to do what it did. Whether or not he said it is immaterial. Well, yeah, but let me – I'm still stuck where Judge Cassin was stuck. I'm reading paragraph 22. Mr. Govella mailed a second-step grievance, quote, regarding a baggage inspection swiping and sampling procedure. It doesn't say what it said. It says regarding. The grievance requested written procedures regarding baggage inspection swiping and sampling as they are not currently included in the SOP. At the end of the letter, AFG legal accounts were included. SOP is considered security-sensitive information. But the previous sentence talks about as they are not currently included in SOP. I don't get it. Well, Your Honor, I would refer you to subpart 9, little i. Any procedures including selection criteria, common instructions, implementing guidance for screening a person's successful profit, check value, et cetera, is SSI. What is within a certain procedure – Excuse me. But I think you got that from outside of the complaint. Your Honor, it's a regulation. It's a matter of law. It's part of the CFO. It's part of the CFO. But as I read that complaint, a fair reading of it is he didn't send anything that was SSI. And as I read that complaint further, it's not a guarantee that he did anything other than put in a sort of an interorum CC at the bottom. In other words, I think your position is something like this. You know, if a screener says to a supervisor, you know, I think we should include procedures for screening a shampoo, right, because they're not included in the SOP, that would be a breach of the SSI regulation. Is that right? Absolutely. Right. Absolutely. And you know why? Because the terrorist has that information. So knowing what's in the procedure is just – and what's not within the procedure is just as important as knowing what's in the procedure. No, but you know – No, no, no, but just a minute. See, here's where the problem comes in. I mean, to a certain extent, those procedures are known to the public, including people like me, because they have to be known, because, you know, they tell you to take off your shoes, for instance. So if somebody says, a screener says to the supervisor, I don't think SOP should include, you know, screening shoes anymore because it's a useless – it's a useless procedure, as Louis Black has told us. All right? So is that a breach of the SSI? To the extent that a TSA employee discloses information that concerns this procedure, it is considered by the NSA – Even though it's known to the public? It doesn't matter, Your Honor, because the employee is not at liberty to make that disclosure, regardless of who knows it, period. This is considered sensitive information for a reason. And that is the information – Well, you hope for a reason. Well, I hope it is for a reason, because I hope they do their jobs, because I fly airplanes, too. The point on this is, is that TSA was within its discretion to construe this letter as disclosing. My problem, I have to say, with the case in its current posture is that we're working pretty hard to figure out what these two paragraphs in the complaint mean, and the district judge hasn't addressed this at all in the first instance. What I would suggest that the Court do, and I apologize for going over time here. Yeah. We've taken you over. It's not your fault. The point on this is, is that what the Court ought to do is address the complaint as written, given due deference to the TSA's reading of its own regulations and its policies, dismiss the complaint for failure to state a claim, and then remand the case, if it's assumed in the jurisdiction, for them to file a new complaint. They would have all sorts of new allegations in the reply brief that aren't in the complaint. First, that there was a sham. You know, this is a pretty good district judge. She'll do a good job in terms of addressing your 12B6 motion. Certainly the Court can do that. The Court also should address the sovereign immunity question and should address the standing question. And that, of course, relates to the sufficiency of the complaint. Right now, we don't even have an allegation that Cabello's a member. Okay. I thank the Court for its patience. Thank you. Thank you very much. Thank you. One of the reasons that you're confused as to what the complaint says is because the complaint does not say what the government says it says. You are accurate to read that he did not send SSI. Were Mr. Cabello to send the government's response, this is what the procedure is. That would have been SSI. Well, what's your response to Mr. Pennock's citation of this section 1520.5 and so forth? The book says, you know, you can't disclose, make any reference to it. You can't disclose the procedures. Mr. Cabello did not disclose the procedures. Mr. Cabello No, you can't disclose that it's not included in the procedure. That is not, in our opinion, how that regulation Isn't that the effect of the regulation says, you know, you can't disclose a procedure or the extent of the procedure or what's not in the procedure. And he disclosed that it's not in the procedure. And that's the claim. That's what Mr. As I understand, Mr. Pennock's argument, that's the breach of the SSI regulation. The thrust of Mr. Cabello's grievance was to inquire what the procedure was because he didn't know what the procedure is. And therefore, I think the court would agree with us that it's important for the screening, the people doing the screening to know what they're supposed to be doing. And that was exactly the question is not whether it's important. You should bring it to the attention. The question is whether he had a right to disclose it to a third party. That's correct. That's what the question is. And the answer is The regulation seems to me has to be read with a view to common sense. It can't mean that it's a violation of the regulation to disclose everything that's not covered by the procedures because, for example, the current crisis in growing pineapples in Hawaii is not covered in the procedures. And I cannot imagine that that would be a breach of SSI for him to write a little about the pineapple crisis on Oahu. I'm not familiar with the pineapple crisis on Oahu, but I would agree with the court. You don't need to be. But I don't think it has anything to do with security one way or the other. And it's not in the procedures. I guess that's why it's not in the procedures. It has nothing to do with it. Yes, Your Honor. Absolutely. But under his argument, it's a violation for him to talk about pineapples. My goodness. We would agree with the court, Your Honor. I've got a problem, though. And that is, I'm tempted to conclude that we have to go on bonk in order to take advantage of the government's concession. Is that right? That is not the appellant's position, Your Honor. We would like to address that point. First of all, Foxter has been called into question. And one of the reasons the reason I mean, the government's right that we have this sentence in Shaw. I'm just reading it to you. It's a tail end of the opinion. The CSRA precludes Saul from seeking injunctive relief for his asserted constitutional injury, just as it precludes him from bringing a Bivens action for damages. That's pretty clear. Yes. How do I get around that, consistent with our policy of a three-judge panel does not have authority to overrule a decision of an earlier three-judge panel? Well, we would argue, Your Honor, that the comprehensive nature of the CSRA does not include TSA. And so in this situation, we are not addressing the typical federal government employee. We were talking about that earlier, what a typical federal government employee would have the right or not have the right to have back pay. In this situation, the TSA was taken out of the CSRA. So it is not comprehensive to include the TSA. Later statutory developments took DHS out of the comprehensive nature of the CSRA. It took the Department of Defense out of the comprehensive nature of the CSRA. The basis upon which Fausto and the basis upon which Saul were decided, that the CSRA is comprehensive and includes every single federal government employee is no longer true anymore many years later. And the TSA was the first example of that. CIA in Webster was also not included in the CSRA. And that is why in Webster v. Doe, you don't have a comprehensive discussion about the CSRA at all. CSRA is not discussed. What they discuss is the NSA, the statute that created the personnel policy for the CIA members. And so in this case, what appellants argue is that what should be viewed, what should be really analyzed and scrutinized is whether the ATSA, the statute creating the TSA, and the statute that created the personnel policy for the screeners, whether that has an express or implicit repeal of federal question jurisdiction. And we would argue that it does not have either an express or an implicit repeal. So that were you to evaluate, you don't necessarily have to go on bonk. What we would propose is that you rule based on your evaluation of the ATSA. Since the CSRA, both parties, I think the government agrees, does not apply to the ATSA at all at this juncture. Going to another issue that was discussed or questioned. You're over time, so if you just could wrap up. I'm not going to cut you off in mid-sentence, but say what you need to say. Thank you. Just to wrap up, one of the things the government says is that the back pay would compensate him. I think the quote was, back pay compensates him for the loss of his job. And that's not accurate. Restoration to his job compensates him for the loss of his job. Back pay flows ancillary to that injunctive relief, and that is why it is permitted. Well, you know, if you start analyzing or analogizing to the Eleventh Amendment sovereign immunity, you're in trouble. Yeah, yeah. Okay. And with that, Your Honor, I thank you for allowing me to go over time. Okay. And we ask that this Court rename this case for further processing. Thank you very much. Both sides for good arguments in a tricky case. The case of American Federation of Government Employees, Local 1 v. Stone is now submitted for decision. We will be.
judges: Tashima, W. Fletcher, Holland